The LANG COMPANY, Inc., a Utah Corporation,

v.

The UNITED STATES.

No. 2-54.

United States Court of Claims.
June 5, 1956.

Wilford M. Burton, Salt Lake City, Utah, for plaintiff.

Frances L. Nunn, Washington, D. C., with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LARAMORE, Judge.

Plaintiff sues for money due and owing pursuant to completed and approved work and materials furnished the Army and Air Force in 1953. A portion of these moneys has been used to liquidate an alleged indebtedness to the Maritime Commission. The remainder has been paid to plaintiff.

The case arises on defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment.

The question involved is whether or not later contracts were canceled by mutual agreement thereby preventing the Government from asserting a claim by way of setoff for excess costs of obtaining performance of the contract elsewhere.

The facts as disclosed by the pleadings, exhibits, and affidavits in support of the respective motions are as follows:

In April of 1944, when the matters involved in defendant's claimed setoff arose, the Lang Company was a partnership. Plaintiff is a corporation of Utah incorporated in 1946.[1]

On March 21, 1952, plaintiff entered into a written contract with the Army for reconditioning construction and maintenance equipment, and performed work and furnished materials under that contract. Defendant admits that $7,429.27 has not been paid plaintiff under that contract, but says said sum was set off against plaintiff's indebtedness to defendant.

Between February 27, 1953, and April 13, 1953, plaintiff furnished and delivered labor and materials to the Department of the Army. Defendant admits that $4,728.27 is owing because of those transactions, but alleges said sums were also set off against plaintiff's indebtedness to defendant.

The indebtedness defendant alleges is owing by plaintiff, for which the setoff was asserted, arises by reason of a contract entered into between plaintiff and the Maritime Commission, whereby plaintiff undertook to provide compressed-air receivers and surge tanks for 78 ships in the sum of $1,251.22 per unit, for a total bid of $97,595.16.

On May 20, 1944, the Maritime Commission submitted to plaintiff a proposed purchase order for material for 45 ships. However, on May 25, 1944, plaintiff by telephone, wire, and letter, requested to be released from the bid and order, stating that it had overlooked the necessity of X-raying and stress-relieving as specified on the drawings. Plaintiff further stated in its requests that no equipment was available in its territory to do this type of work. In the letter requesting release, plaintiff returned unsigned the purchase order heretofore referred to. Pursuant to this request for release the Government sent its purchase order to plaintiff stating thereon "Cancel this order in its entirety."

On June 10, 1944, approximately 2 weeks after the order of cancellation had been sent, the U. S. Maritime Commission, by its letter forwarding to plaintiff the purchase order above referred to, stated "For completion of our records, we would appreciate receiving by return mail two signed copies of the purchase

---

1. For the purposes of this opinion, the corporation and partnership will be referred to as plaintiff.

order." The purchase order was signed by plaintiff on June 13, 1944, and returned to defendant.

The position of the Government is that plaintiff defaulted on the contract and implements its argument by an affidavit of a Mr. Coakley, Chief of the Purchasing Branch, Division of Purchase and Sales, Department of Commerce (successor to the U. S. Maritime Commission), wherein he avers:

> "5. It was customary procedure and practice in the Procurement Division of the United States Maritime Commission in 1944, in a situation where a contractor defaulted after accepting a contract, and there was no finding that the failure to charge the contractor with excess costs would facilitate the war effort, to hold the contractor liable to the Government for the excess costs occasioned by obtaining the performance of the contract elsewhere, under Articles 14 and 15 of the General Provisions, which are specifically made a part of the contract. None of the records of the Maritime Administration available to the affiant indicate any intention to depart from the above described procedures usually followed in cancellation of contracts of this kind. None of the records of the Maritime Administration available to the affiant show a finding that failure to hold The Lang Co., Inc. for excess costs would have facilitated the war effort."

However, none of the elements of a default by plaintiff are present in this case. The fact is that the contract was never at any time repudiated by the plaintiff in that there was never a refusal to perform.

Volume V, Williston on Contracts, Rev. Ed., at page 3724, under section 1324, entitled "Positiveness of repudiation," states as follows:

> "It is invariably stated in the decisions that in order to give rise to an anticipatory breach of contract the defendant's refusal to perform must have been positive and unconditional."

As a matter of fact, had plaintiff believed the contract not to have been canceled, it could have complied with the X-raying and stress-relieving conditions by utilizing the facilities available on the West Coast, which was not too far distant from the location of plaintiff. The fact that these facilities were available is borne out by the fact that eventually the Government secured its materials from a manufacturer on the Pacific Coast. Furthermore, paragraph (a) of article 14 of the "Plans and Specifications: Interpretation and Changes," provides:

> "Art. 14. *Events of Default.*— The following shall constitute events of default under this contract:
>
> "(a) Failure of Vendor in any respect to use due diligence in proceeding with the performance of the work required under this contract, or failure to perform any of the covenants on its part to be performed hereunder or breach of any warranty contained herein, provided that Buyer in either instance shall give written notice to Vendor as to such failure or breach."

No notice in writing of a default was ever given plaintiff.

Therefore, when plaintiff telephoned the Maritime Commission asking to be released from the contract and was advised that the release would be granted, and when the Commission returned the purchase order with the statement "Cancel this order in its entirety," we must conclude that rather than a default the contract was canceled by mutual agreement, and neither of the parties could enforce the contract or sue for any breach thereof.

Plaintiff is entitled to recover the amount of $12,157.54 withheld by the Government on the contracts for work done and materials furnished by plaintiff to the Government.

Defendant's motion for summary judgment is denied, and plaintiff's cross-

motion for summary judgment is granted.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER, and LITTLETON, Judges, concur.